UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG FRENTZEL, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV214 JCH |
| | ) | |
| JIM MOORE, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Correctional Medical Services, Inc. ("CMS"),

Jewel Cofield ("Cofield"), Dr. Elizabeth Conley ("Conley"), and Betty Johnson's ("Johnson") Motion

for Summary Judgment, filed September 24, 2007. (Doc. No. 190). The matter is fully briefed and

ready for disposition.

## BACKGROUND

Plaintiff Craig Frentzel ("Plaintiff") was an inmate confined in the Missouri Department of

Corrections ("MDOC") at the Eastern Reception and Diagnostic Correctional Center ("ERDCC")

from April 15, 2005, to July 14, 2005, and at the Northeast Correctional Center ("NECC") from July

14, 2005, to approximately December, 2005. (Defendants CMS, Cofield, Conley and Johnson's

Statement of Uncontroverted Material Facts in Support of Defendants' Motion for Summary

Judgment ("Defendants' Facts"), ¶ 1).[1] According to Plaintiff, prior to his incarceration, he was

taking various medications while under the care of a psychiatrist, Dr. Mathew. (Plaintiff's Second

Amended/Supplemental Pleadings ("Complaint" or "Compl."), ¶ 26). Plaintiff maintains these

---

[1] Because Plaintiff did not respond to Defendants' Statement of Uncontroverted Material
Facts, the facts are deemed admitted for purposes of this summary judgment motion. See E.D. Mo.
L.R. 7-4.01(E).

medications were dispensed to him properly while he was held at the St. Louis County Justice Center ("SLCJC"), prior to his transfer to MDOC. (Compl., ¶ 27).

On or about April 15, 2005, Plaintiff was transferred from SLCJC to ERDCC in Bonne Terre, Missouri. (Defendants' Facts, ¶ 2). Plaintiff's St. Louis County Health Corrections Medicine Medical Transfer Sheet, dated April 14, 2005, stated Plaintiff's condition was stable, and that he had no medications and had received no treatment in St. Louis County. (Id., ¶ 3, citing Defendants' Exh. A[2], P. 126).

Upon Plaintiff's arrival at ERDCC on April 15, 2005, medical staff assessed Plaintiff[3], and completed both an Intake Health Screening and an Intake Mental Health Screening. (Defendants' Facts, ¶ 4, citing Defendants' Exh. A, PP. 6-7, 120-121). That same day, Plaintiff provided information for a Psychological Services Screening Questionnaire, and executed an Informed Consent for Mental Health Services at ERDCC. (Id., ¶ 5, citing Defendants' Exh. A, PP. 273, 276). Plaintiff maintains that despite assurances from the medical staff, he did not receive his psychiatric medications that night, or for several days to follow. (Compl., ¶ 28).[4]

On or about April 20, 2005, Plaintiff met with Defendant psychiatrist Percival Tiongson. (Compl. ¶ 30). On April 21, 2005, Plaintiff executed a Medication Consent form, in which he agreed to treatment with the following medications recommended to him by the prison psychiatrist: Effexor, Inderol, Lithium, and Trazodone. (Defendants' Facts, ¶ 7, citing Defendants' Exh. A, P. 272). In

---

[2] Defendants' Exhibit A consists of relevant portions of Plaintiff's CMS medical records.

[3] According to Plaintiff, the staff consisted of employees of Defendant CMS, which has a contract with MDOC to provide health care to offenders. (Compl., ¶¶ 2, 28). Plaintiff does not allege Defendants Cofield, Conley, or Johnson performed the intake examination.

[4] Plaintiff's Medication Administration Record for April, 2005, submitted by Defendants, conversely shows Plaintiff was administered Lithium, Propranolol, and Venlafaxine beginning April 15, 2005, and Trazodone beginning April 21, 2005. (Defendants' Facts, ¶ 9, citing Defendants' Exh. A, P. 256).

the consent form, Plaintiff acknowledged he was made aware of both the benefits and the possible side effects of the prescribed medications. (Id., ¶ 8). Plaintiff maintains that through this process, several of his previously prescribed psychotropic medications were either discontinued by MDOC, or changed to cheaper, less effective generic varieties. (Compl., ¶ 30). Plaintiff asserts he suffered adverse reactions and psychological pain as a result of the alterations. (Id.).

On or about April 21, 2005, Plaintiff was transferred from ERDCC to the Jefferson County Jail, where he was held until April 28, 2005. (Defendants' Facts, ¶ 10). Plaintiff alleges that although he informed his escorting Correctional Officer he was taking medications prior to the transfer, the unnamed Correctional Officer took Plaintiff directly to the Jefferson County Jail without stopping at the medical department. (Compl., ¶ 32).[5] As a result, Plaintiff maintains he spent eight days in the custody of the Jefferson County Jail without his medications, and thus, "went through psychological torture, pain [in] his brain, panic attacks, tremors, paranoia, nightmares, severe depression and became suicidal." (Id., ¶ 33).

Upon his return to ERDCC on April 28, 2005, Plaintiff was seen by medical staff, and then given his medication at the "medication window." (Compl., ¶ 34; Defendants' Exh. A, P. 12). Plaintiff's medical records show he reported no mental health concerns at that time. (Defendants' Facts, ¶ 13, citing Defendants' Exh. A, P. 12). Plaintiff further met with medical staff on May 5, May 10, May 11, and May 17, 2005, for unrelated medical concerns, but reported no mental health complaints, alleged trauma, or crises during those visits. (Defendants' Facts, ¶ 15, citing Defendants' Exh. A, PP. 13-15).

---

[5] According to Plaintiff, it is MDOC policy that an ample supply of psychotropic medications be sent with offenders going out to court and back ("out-count"). (Compl., ¶ 31).

On May 10, 2005, Plaintiff met with the mental health staff regarding his Individual Treatment Plan, which describes Plaintiff's mental health diagnosis, psychotropic medications, reported complaints, mental health goals, Plaintiff's responsibilities to achieve those goals, and the staff's interventions and responsibilities. (Defendants' Facts, ¶ 16, citing Defendants' Exh. A, P. 271). Plaintiff's Medication Administration records demonstrate that Plaintiff then received his prescription medications on a continuous and ongoing basis during his confinement, unless the medication was voluntarily refused by Plaintiff. (Id., ¶ 17, citing Defendants' Exh. A, PP. 127-158, 243-256).

On or about May 4, 2005, Plaintiff filed an Informal Resolution Request ("IRR"), ERDCC 05-1137, stating as follows:

> D.O.C. did not send psych. meds with me to Jefferson Co. Jail on outcount.
> For the eight days I was there [I] didn't receive any meds from them. From 4/21-4/28.
> Being denied proper medical care and had major psychological problems during this period. I felt that my physical well-being was threatened also.

(Defendants' Exh. B[6], P. 345). On June 26, 2005, Ms. Tymber Spray, RN, Director of Nursing, responded to Plaintiff's IRR as follows:

> A.     I understand your concern to be as follows: Your psych medications were not sent with you on court outcount to Jefferson City. You had to go eight days without them and had major psychological problems during this period.
>
> B.     My information reveals the following after investigating your concerns: Upon return to ERDCC on 04-28-05 you were seen by medical staff and denied having any problems. I understand that at times offenders are sent out without medical being notified. We make every effort to get medications to offenders if notified of the outcount.

(Defendants' Exh. B, P. 346). Plaintiff then filed an Offender Grievance, stating as follows:

> On the IRR response (part B) it says that I denied having any medical problems. That is untrue. I explained my situation to the nurse and she

---

[6] Defendants' Exh. B consists of relevant portions of Plaintiff's Inmate Grievance Records, as maintained by MDOC. (Defendants' Facts, ¶ 18).

replied that it wasn't medical's fault because D.O.C. is supposed to get all outcount medications and go through medical before leaving the camp. I still have psychological problems and trauma do (sic) to this serious issue. I expect to be paid $50,000 from either medical or D.O.C. (ERDCC) or $25,000.00 each. For psychological, emotional, and improper medical care and neglect.

(Defendants' Exh. B, P. 344). Defendant Johnson, RN Health Services Administrator at ERDCC,

responded to Plaintiff's Grievance in relevant part as follows:

I have read and reviewed your Informal Resolution Request (IRR) with the corresponding response and your Grievance. I have also examined your medical record regarding this issue. I understand your concern as:

You state that you were sent on an outcount and you went eight (8) days without your medication and that because of this you have suffered major psychological trauma.

Subsequent to my review and investigation, I have found the following:

Unfortunately, there are circumstances that occur and medical may not be informed of an outcount. This is a situation that is currently being monitored for quality assurance purposes.

When you returned from your outcount on 4/28/2005 it was charted that you voiced no complaints. You were seen by a nurse the next day for a PPD test and did not voice any complaints of major psychological problems and you were also seen by a nurse consecutively on 5/2/05, 5/5/05, 5/11/05 and 5/17/05. You did not mention any mental health problems, trauma, or crisis that you were having.

If at the time you submitted this grievance, which is dated 8/9/05, you were suffering from psychological problems, I can assure you it was not due to being without your meds for eight days in the month of April. A Psychiatrist has also evaluated you since then and there is no mention of any psychological trauma or crisis. However, with your consent, you have had several changes made by the Psychiatrist in regards to your medications.

(Defendants' Exh. B, P. 342). Plaintiff then filed an Offender Grievance Appeal, in relevant part as

follows:

The reason for this appeal of my grievance is for the fact that not only was I denied my psychiatric medications for eight days, but I also was treated with deliberate indifference and neglegence (sic) before, during, and after that

period of time. ERDCC's response to my grievance, about not voicing any mental health problems, trauma, or crisis has no merit whatsoever, and shows no remorse for their actions taken.

(Defendants' Exh. B, P. 340). On January 26, 2006, Defendant Cofield, Regional Manager, issued

the following response, which was reviewed by Defendant Conley, D.O., Regional Medical Director:

Your grievance appeal has been received and reviewed. As well, your medical record has been reviewed. The purpose of this review is to assure that timely and appropriate healthcare has been provided to you. This assessment of your medical needs may differ from your personal desires.

I understand your complaint to be that you contend that you returned from an eight (8) day outcount on April 28, 2005 and had been without your medication. You contend that because of this you have suffered major psychological trauma.

Upon review of your medical record and investigation of your concern, I found that you were seen on April 28, 2005 after you returned from a court outcount. At that encounter, you expressed no complaints. Your healthcare record reflects that you had four (4) healthcare encounters prior to medical's awareness of any health concerns. It is documented that the medical unit was not aware of your outcount. Your record shows no inability to access health care.

Conclusion: Given the above information, I cannot support your Grievance Appeal. Your record supports appropriate care and treatment for your medical needs when they have been presented/expressed to the health care professionals.

(Defendants' Exh. B, P. 341).

Plaintiff filed his original Complaint in this matter on February 15, 2006. (Doc. No. 3). In

his Second Amended Complaint, filed March 12, 2007, Plaintiff asserts the following causes of action

against Defendants CMS, Johnson, Cofield, Conley and others[7]: Deliberate Indifference to Serious

---

[7] Plaintiff includes assertions regarding other alleged constitutional violations in his Second Amended Complaint. Plaintiff makes no claims against Defendants Johnson, Cofield, or Conley, however, for any alleged acts or conduct occurring after his transfer from ERDCC to NECC in July, 2005. (Defendants' Facts, ¶ 35).

Medical Needs (Count I); Cruel and Unusual Punishment (Count II); Due Process (Count III); and Prima Facie Tort (Count IV).[8]

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

---

[8] Count IV of Plaintiff's Complaint was dismissed on July 24, 2007, for failure to file a healthcare affidavit. (Doc. No. 165).

**DISCUSSION**

I.      **Defendants Johnson, Cofield and Conley**

As shown above, Plaintiff has not alleged Defendants Johnson, Cofield, and Conley were personally involved in providing any of his medical care, or that their care was in any way deficient. Rather, Plaintiff's claims against these Defendants appear to be based solely on their denials of his Grievance and Grievance Appeal.[9]

"A 'grievance procedure does not confer any substantive constitutional right upon prison inmates.'" Bostic v. Babich, 2008 WL 906801 at *7 (E.D. Mo. Apr. 3, 2008), quoting Barrett v. Correctional Medical Services, Inc., 2008 WL 413841 at *2 (E.D. Mo. Feb. 13, 2008). Therefore, "the denial of grievances, in and of itself, cannot support a substantive constitutional claim." Walls v. Highsmith, 2007 WL 4468694 at *2 (E.D. Mo. Dec. 17, 2007), citing Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002). See also Bostic, 2008 WL 906801 at *7 (internal quotations and citations omitted) ("The denial of [a grievance] is insufficient to impose liability and does not result in a constitutional violation."). Further, because Plaintiff sets forth no facts indicating any of these Defendants were directly involved in or personally responsible for the alleged violations of his constitutional rights, he fails to state a claim against Defendants Johnson, Cofield, and Conley. See Walls, 2007 WL 4468694 at *2, citing Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation

---

[9] Defendants Johnson, Cofield, and Conley are referenced only one time in Plaintiff's Complaint, as follows: "Plaintiff filed and pursued to the final 'Grievance Appeal' and exhaustion of the preceding matters, but was denied by defendants J. Purkett, T. Spray, John or Jane Doe #1 (employee #24121), B. Johnson, J. Cofield and E. Conley in one or all of the grievance procedure stages." (Compl., ¶ 35).

of rights."). Defendants Johnson, Cofield, and Conley's Motion for Summary Judgment must therefore be granted.[10]

## II.     Defendant CMS

In his Second Amended Complaint, Plaintiff repeatedly alleges that pursuant to its various customs, practices, and "de facto" policies, Defendant CMS denied Plaintiff his prescribed medications, discontinued Plaintiff's medications and/or changed them to inferior generic equivalents, and failed to exercise effective supervision over other medical Defendants in their treatment of Plaintiff. (See, e.g., Compl., ¶¶ 23, 25, 26, 28, 30, 31, 37, 38, 40, 41). Plaintiff offers no evidence of these alleged policies, practices, or customs in his Complaint, however, nor does he show a widespread pattern of unconstitutional behavior resulting from the policies.[11] Defendant CMS's Motion for Summary Judgment will therefore be granted.[12]

---

[10] To the extent Plaintiff attempts to assert new claims against Defendants Johnson, Cofield, Conley and/or CMS in his response to Defendants' Motion for Summary Judgment, such claims are not properly before this Court and will not be addressed in this Order.

[11] Plaintiff further fails to set forth in his response to Defendants' Motion for Summary Judgment specific facts showing a genuine issue regarding CMS's alleged policies, practices or customs remains for trial. (See Plaintiff's Response to Defendants Correctional Medical Services, Inc., Jewel Cofield, Dr. Elizabeth Conley and Betty Johnson's Motion for Summary Judgment, PP. 1-3; Fed.R.Civ.P. 56(e)(2)).

[12] To the extent Plaintiff's claim against CMS is based on respondeat superior, due to CMS's position as several of the individual Defendants' employer, "such claim fails because the doctrine of respondeat superior is inapplicable in § 1983 actions." Walls, 2007 WL 4468694 at *2 (citations omitted).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Correctional Medical Services, Inc., Jewel Cofield, Dr. Elizabeth Conley, and Betty Johnson's Motion for Summary Judgment (Doc. No. 190) is **GRANTED**, and Plaintiff's claims against Defendants CMS, Cofield, Conley and Johnson are **DISMISSED** with prejudice.

Dated this 6th day of June, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE