UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CRAIG FRENTZEL, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:06CV214 JCH |
| ) | |
| JIM MOORE, et al., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Anasseril Daniel, M.D. ("Daniel"), Daniel Correctional Psychiatric Services, Inc. ("DCPS"), Percival Tiongson, M.D. ("Tiongson"), Kavita Pendurthi, M.D. ("Pendurthi"), Kami Bradley, R.N. ("Bradley"), and Sadashiv Parwatikar, M.D.'s ("Parwatikar") (collectively "Defendants") Motion to Dismiss for Failure to State a Claim, filed September 19, 2007. (Doc. No. 186). The matter is fully briefed and ready for disposition.

## BACKGROUND

At all times relevant hereto, Plaintiff Craig Frentzel ("Plaintiff") was an inmate confined in the Missouri Department of Corrections ("MDOC"), held variously at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC"), the Northeast Correctional Center ("NECC"), and the Algoa Correctional Center. (Plaintiff's Second Amended/Supplemental Pleadings ("Complaint" or "Compl."), ¶¶ 28, 36). Defendant DCPS provides psychiatric services to inmates in MDOC pursuant to a contract with former Defendant Correctional Medical Services, Inc. ("CMS").[1] (Defendants' Joint Answer to Plaintiff's Second Amended Complaint, ¶ 3).

---

[1] Plaintiff alleges CMS has a contract with MDOC to provide health care to offenders within MDOC. (Compl., ¶ 2).

According to Plaintiff, prior to his incarceration he was taking various medications while under the care of a psychiatrist, Dr. Mathew. (Compl., ¶ 26).[2] Plaintiff maintains these medications were dispensed to him properly while he was held at the St. Louis County Justice Center ("SLCJC"), prior to his transfer to MDOC. (Id., ¶ 27).

On or about April 15, 2005, Plaintiff was transferred from SLCJC to ERDCC in Bonne Terre, Missouri. (Compl., ¶ 28). Plaintiff maintains that upon his arrival at ERDCC, he was processed through the medical unit[3], and he explained to former Defendant Terry Bishop that he had psychological illnesses requiring medication. (Id.). Plaintiff contends that despite assurances from the medical staff, he did not receive his psychiatric medications that night, or for several days to follow[4], nor was he permitted to see the psychiatrist, Defendant Tiongson. (Id., ¶¶ 28, 29). Plaintiff alleges he went through mental and psychological pain and trauma due to the lack of medication. (Id., ¶ 29).

On or about April 20, 2005, Plaintiff met with Defendant psychiatrist Tiongson. (Compl. ¶ 30). According to Plaintiff, "pursuant to the custom, practice and de facto policies of defendants DCPS, CMS and A.E. Daniel, plaintiff[']s previously prescribe[d] psychotropic medications were either discontinued and/or changed to much cheaper and generic medications." (Id.). Plaintiff further

---

[2] One of the medications Plaintiff claims he was taking was Lithium Carbonate. (Compl., ¶ 26). Plaintiff asserts that although he was instructed to have his serum Lithium levels checked at least weekly, Defendant DCPS failed to do so. (Id.).

[3] Plaintiff alleges the medical unit was staffed by employees of former Defendant CMS and Defendant DCPS. (Compl., ¶ 28). Plaintiff does not allege, however, that Defendants Daniel, Tiongson, Pendurthi, Bradley, or Parwatikar performed the intake examination. (Id.).

[4] Plaintiff asserts the failure to provide medication was due to the custom, practice, and de facto policies of Defendants DCPS, Daniel, and others. (Compl., ¶ 28).

maintains he suffered adverse reactions and psychological pain in response to Defendant Tiongson's decision to, among other things, prescribe Trazadone in place of Seroquel. (Id.).[5]

On or about July 14, 2005, Plaintiff was transferred from ERDCC to NECC, and immediately placed in administrative segregation. (Compl., ¶ 36). Plaintiff alleges he told the mental health nurse, Defendant Bradley, that he was having a problem with his psychotropic medications and needed to see the psychiatrist, Defendant Pendurthi. (Id., ¶ 37). Plaintiff maintains Defendant Bradley ignored this complaint[6], and further denied his request that she leave the "chuck-hole" in the door open, as Plaintiff could not breathe due to his asthma, panic attacks, heat exhaustion, and adverse reactions to his medications. (Id.). Plaintiff states that as a result, he suffered, "severe pain in his head, panic attacks, paranoia, psychosis, cramps, hearing voices, had diarrhea, extreme thirst and dizziness, with blackouts and became suicidal." (Id.).[7]

On or about August 8, 2005, Plaintiff did meet with Defendant psychiatrist Pendurthi. (Compl., ¶ 38). When he explained the adverse reactions and psychological trauma he was suffering due to the changes in his medications, however, Plaintiff maintains Defendant Pendurthi merely scolded him for refusing to take the prescribed Lithium Carbonate. (Id.).[8] Plaintiff asserts Defendant

---

[5] Plaintiff asserts he was told by Defendant Tiongson and others that per Defendant Daniel's policy, they could not prescribe Seroquel or several other medications he currently was taking. (Compl., ¶ 30).

[6] Plaintiff maintains his complaints were ignored due to the custom, practice, and de facto policies of, among others, Defendants DCPS and Daniel. (Compl., ¶ 37).

[7] In his Complaint, Plaintiff further states he, "now knows that he was suffering from Lithium Poisoning/Intoxication." (Compl., ¶ 37). Plaintiff attaches to his Complaint an apparent e-mail from a Dr. Simon Chiu, in which Dr. Chiu discusses in general terms the causes, symptoms, and possible effects of lithium toxicity. (See Doc. No. 124-3, PP. 1-2).

[8] Plaintiff alleges that although he informed Defendant Pendurthi his refusal was due to the shaking and other negative side effects he was experiencing, she nevertheless failed to check his serum Lithium levels or perform other neurological tests. (Compl., ¶ 38). Plaintiff believes that as a result, he has suffered psychoneurological damage. (Id.).

- 3 -

Pendurthi further denied his request to be prescribed the medications he was taking prior to his incarceration, stating Defendant Daniel did not authorize those medications. (Id.).[9]

On or about October 11, 2005, Plaintiff filed an Informal Resolution Request ("IRR"), requesting that he receive the same medications he was prescribed prior to his incarceration. (Doc. No. 124-4). Specifically, Plaintiff requested Effexor X.R., Seroquel, Neurontin, Strattera, and Propranolol. (Id.). The IRR is marked "resolved by discussion/withdrawn," as of October 20, 2005, and in the discussion section, prison official Joseph Miller wrote as follows: "He [Plaintiff] stated that his meds are now much better." (Id.). Plaintiff denies making the statement, however, and further asserts he only signed the IRR resolved because he was promised the requested drugs were to be ordered. (Id.). Instead, Plaintiff alleges that while he was approved for and eventually received Seroquel, he still was denied Neurontin due to cost and the custom, practice, and de facto policies of, among others, Defendants DCPS and Daniel. (Compl., ¶ 40). Finally, Plaintiff alleges that on or about November 1, 2005, when he reported to the medical unit to receive his medications, he was informed by Defendant Bradley that some of his medications had been discontinued by Defendant Daniel.[10] (Id., ¶ 41).[11]

In or around February, 2006, Plaintiff filed a second IRR regarding the failure to supply his previously-prescribed medications, as follows:

> I was taking stattera (sic), for ADHD and Neurontin, for bi-polar mood disorder and general anxiety disorder for several years, prior to my

---

[9] Plaintiff alleges Defendant Daniel's refusal to authorize the medications was due to cost, and further that the medications were denied due to the custom, practice and de facto policies of Defendants DCPS and Daniel. (Compl., ¶ 38).

[10] Plaintiff does not specify which medications allegedly were discontinued.

[11] Once again, Plaintiff says it was a custom, practice and de facto policy of Defendants DCPS and Daniel to discontinue offenders' medications without their first having been seen by a psychiatrist. (Compl., ¶ 41).

> incarceration. I was told that they are too expensive. Due to this, I have been unable to concentrate, have panic attacks along with anxiety and nervousness. I also feel tired and fatigued all the time. For ten months now, I have been going through a trial and error basis on different medications, instead of just giving me what has been proven to work for me in the past. Cost should not be an issue when it comes to my psychological well being.

(Doc. No. 3-2, P. 30). Plaintiff maintains the IRR and later Grievance were denied by, among others, Defendants Parwatikar and Daniel. (Compl., ¶ 38).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Additionally, the Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted if the Complaint does not contain, "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations, "must be enough to raise a right to relief above the speculative level." Id. at 1965 (citations omitted).

## DISCUSSION

### I. Defendants DCPS, Daniel, Tiongson, Pendurthi, And Bradley

In his Complaint, Plaintiff alleges Defendants DCPS, Daniel, Tiongson, Pendurthi, and Bradley demonstrated deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. The Eighth Circuit has held that, "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and [o]ne condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal

quotations and citations omitted). "To establish that the defendants' conduct violated the Eighth Amendment's prohibition against cruel and unusual punishment, [Plaintiff] must demonstrate that the individual defendants were deliberately indifferent to his serious medical needs." White v. Boydston, 2007 WL 522312 at *5 (E.D. Mo. Feb. 14, 2007) (citations omitted).

> There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs [12] and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted).

Upon consideration, the Court finds Plaintiff's allegations against Defendants DCPS, Daniel, Tiongson, Pendurthi, and Bradley sufficient to survive a motion to dismiss.[13] Specifically, while the Court recognizes that, "[m]ere negligence or medical malpractice [is] insufficient to rise to a constitutional violation," Moots v. Lombardi, 2005 WL 4541944 at *5 (E.D. Mo. Feb. 10, 2005), when viewed in the light most favorable to Plaintiff the current allegations go beyond such deficiencies. Defendants DCPS, Daniel, Tiongson, Pendurthi, and Bradley's Motion to Dismiss for Failure to State a Claim must therefore be denied.[14]

---

[12] "Serious medical need has been defined as a medical need which has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Wilson v. CMS Medical Services, 2007 WL 763092 at *5 (E.D. Mo. Mar. 9, 2007) (internal quotations and citations omitted).

[13] The Court recognizes the majority of Plaintiff's claims against Defendants DCPS and Daniel rely on their alleged policies, practices, or customs, and that similar claims against other Defendants have been dismissed. Rather than simply asserting DCPS and Daniel maintained such policies, however, Plaintiff claims to have evidence supporting the assertion beyond his unsubstantiated allegation. (See, e.g., Compl. ¶¶ 30, 38). The Court must accept Plaintiff's allegations as true, and so Defendants DCPS and Daniel's Motion to Dismiss must be denied.

[14] The Court notes that had these Defendants filed a Motion for Summary Judgment, supported by appropriate documentation including relevant portions of Plaintiff's medical records, it is entirely possible the motion would have been granted. Under the more deferential standard applied to a motion to dismiss, however, Plaintiff's claims survive to trial.

## II. **Defendant Parwatikar**

In his Complaint, Plaintiff does not allege Defendant Parwatikar was personally involved in providing any of his medical care, or that his care was in any way deficient. Rather, Plaintiff's claims against Defendant Parwatikar appear to be based solely upon his denial of Plaintiff's Grievance.[15]

"A 'grievance procedure does not confer any substantive constitutional right upon prison inmates.'" Bostic v. Babich, 2008 WL 906801 at *7 (E.D. Mo. Apr. 3, 2008), quoting Barrett v. Correctional Medical Services, Inc., 2008 WL 413841 at *2 (E.D. Mo. Feb. 13, 2008). Therefore, "the denial of grievances, in and of itself, cannot support a substantive constitutional claim." Walls v. Highsmith, 2007 WL 4468694 at *2 (E.D. Mo. Dec. 17, 2007), citing Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002). See also Bostic, 2008 WL 906801 at *7 (internal quotations and citations omitted) ("The denial of [a grievance] is insufficient to impose liability and does not result in a constitutional violation."). Thus, because Plaintiff sets forth no facts indicating Defendant Parwatikar was directly involved in or personally responsible for the alleged violations of his constitutional rights, he fails to state a claim against Defendant Parwatikar. See Walls, 2007 WL 4468694 at *2, quoting Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."). Defendant Parwatikar's Motion to Dismiss for Failure to State a Claim must therefore be granted.[16]

## **CONCLUSION**

---

[15] Defendant Parwatikar is referenced only one time in Plaintiff's Complaint, as follows: "[P]laintiff later filed another follow up grievance and was exhausted for some of the herewith complaints, and was signed, condoned of inadequate mental health services by defendant[] S. Parwatikar...." (Compl., ¶ 38).

[16] To the extent Plaintiff attempts to assert new claims against Defendant Parwatikar in his response to Defendants' Motion to Dismiss, such claims are not properly before this Court and will not be addressed in this Order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Sadashiv Parwatikar's Motion to Dismiss for Failure to State a Claim (Doc. No. 186) is **GRANTED**, and Plaintiff's claims against Defendant Parwatikar are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendants Anasseril Daniel, Daniel Correctional Psychiatric Services, Inc., Percival Tiongson, Kavita Pendurthi, and Kami Bradley's Motion to Dismiss for Failure to State a Claim (Doc. No. 186) is **DENIED**.

Dated this 23rd day of June, 2008.

/s Jean C. Hamilton
UNITED STATES DISTRICT JUDGE