UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CRAIG FRENTZEL, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:06CV214 JCH |
| | ) |
| JIM MOORE, et al., | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants James Carter ("Carter"), Larry Crawford ("Crawford"), Jim Moore ("Moore"), James Purkett ("Purkett"), and Michelle Thompson's ("Thompson") (collectively "Defendants") Motion for Summary Judgment, filed September 21, 2007. (Doc. No. 189). The matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Craig Frentzel ("Plaintiff") was an inmate confined in the Missouri Department of Corrections ("MDOC") at the Eastern Reception, Diagnostic & Correctional Center ("ERDCC") from April 15, 2005, to July 14, 2005, and at the Northeast Correctional Center ("NECC") from July 14, 2005, to December 13, 2005. (Defendants' Statement of Uncontroverted Material Facts ("Defendants' Facts"), ¶ 2). During the time period relevant to this cause of action, Defendants held the following positions: Director of MDOC (Defendant Crawford); Superintendent of NECC (Defendant Moore); Superintendent of ERDCC (Defendant Purkett); Functional Unit Manager of the administrative segregation unit at NECC (Defendant Carter); and Corrections Classification Assistant in NECC's administrative segregation unit (Defendant Thompson). (Defendants' Facts, ¶¶ 3-7).

According to Plaintiff, prior to his incarceration he was taking various medications while under the care of a psychiatrist, Dr. Mathew. (Plaintiff's Second Amended/Supplemental Pleadings ("Complaint" or "Compl."), ¶ 26). Plaintiff maintains these medications were dispensed to him properly while he was held at the St. Louis County Justice Center ("SLCJC"), prior to his transfer to MDOC. (Compl., ¶ 27).

On or about April 15, 2005, Plaintiff was transferred from SLCJC to ERDCC in Bonne Terre, Missouri. (Compl., ¶ 28). Plaintiff maintains that upon his arrival at ERDCC, he was processed through the medical unit[1], and he explained to former Defendant Terry Bishop that he had psychological illnesses requiring medication. (Id.). Plaintiff maintains that despite assurances from the medical staff, he did not receive his psychiatric medications that night, or for several days to follow.[2] (Id.). Plaintiff alleges he went through mental and psychological pain and trauma due to the lack of medication. (Id., ¶ 29).

On or about April 21, 2005, Plaintiff was transferred from ERDCC to the Jefferson County Jail, where he was held until April 28, 2005. (Compl., ¶¶ 31, 34). Plaintiff alleges that although he informed his escorting Correctional Officer he was taking medications prior to the transfer, pursuant to the custom, practice and de facto policies of Defendants Purkett and Crawford, the unnamed Correctional Officer took Plaintiff directly to the Jefferson County Jail without stopping at the

---

[1] Plaintiff alleges the medical unit was staffed by employees of former Defendant Correctional Medical Services, Inc. ("CMS"), which has a contract with MDOC to provide health care to offenders within MDOC, and Defendant Daniel Correctional Psychiatric Services ("DCPS"), which has a contract with CMS to provide psychiatric services for offenders within MDOC. (Compl., ¶¶ 2, 3, 28).

[2] Plaintiff asserts the failure to provide medication was due to the custom, practice, and de facto policies of Defendants Crawford, Purkett, and others. (Compl., ¶ 28).

medical department. (Id., ¶ 32).³  As a result, Plaintiff maintains he spent eight days in the custody of the Jefferson County Jail without his medications, and thus, "went through psychological torture, pain [in] his brain, panic attacks, tremors, paranoia, nightmares, severe depression and became suicidal." (Id., ¶ 33). Upon his return to ERDCC on April 28, 2005, Plaintiff was seen by medical staff, and eventually was given his medication at the "medication window." (Id., ¶ 34).⁴

On July 7, 2005, Plaintiff received a Conduct Violation Report ("CVR"), for allegedly burning a homemade wick inside the air vent in his cell and setting off the fire alarm. (Doc. No. 3-2, P. 4). That same day, Plaintiff was assigned to temporary administrative segregation confinement at ERDCC. (Id., P. 3).

On or about July 14, 2005, Plaintiff was transferred from ERDCC to NECC, and immediately placed in administrative segregation. (Compl., ¶ 36; Doc. No. 3-2, P. 5). NECC's administrative segregation unit does not have air conditioning; rather, the facility is cooled by large exhaust fans installed in the walls outside the offenders' cells and by vents in the cell windows. (Defendants' Facts, ¶ 14). On hot days, ice is provided to offenders. (Id.). Plaintiff maintains that during his time in administrative segregation, the unit reached temperatures of over one hundred degrees. (Compl., ¶ 36). Plaintiff further states he was not permitted to make an emergency phone call while in administrative segregation, nor was he permitted to purchase stamps, playing cards, or certain hygiene items. (Id.). Plaintiff further alleges thousands of ants emerged from crevices in the cell walls, and bit Plaintiff "to where there were red bumps all over his body." (Id.).

---

³ According to Plaintiff, it is MDOC policy that an ample supply of psychotropic medications be sent with offenders going out to court and back ("out-count"). (Compl., ¶ 31).

⁴ Plaintiff filed an Informal Resolution Request ("IRR") regarding the alleged failure to send his medications with him to the Jefferson County Jail. (Doc. No. 3-2, P. 1). The IRR and eventual Grievance and Grievance Appeal were denied by former Defendants Tymber Spray, Betty Johnson, Jewel Cofield, and Elizabeth Conley. (Id., PP. 2, 13-14; see also Doc. No. 124-2, PP. 1-2).

On July 20, 2005, Plaintiff's initial classification hearing was held, and it was recommended that Plaintiff remain assigned to administrative segregation pending notification of the disposition of his CVR at ERDCC. (Doc. No. 3-2, P. 6). On July 25, 2005, Plaintiff received a second CVR at NECC, in response to an incident in which Plaintiff allegedly flushed two milk cartons and one latex glove down his toilet. (Doc. No. 3-2, P. 7). Plaintiff received a sanction of ten days disciplinary segregation, and a fine of $45.00 for damages to the auger used to unclog the toilet. (Doc. No. 124-5).[5] Plaintiff remained in the administrative segregation unit at NECC until August 12, 2005. (Defendants' Facts, ¶ 11; Doc. No. 3-2, P. 10).

On or about June 9, 2006, Plaintiff's mother, Linda Frentzel, filed an Offender Abuse Complaint regarding the above described conditions. (Doc. No. 69-3, PP. 9-10). On June 15, 2006, Defendant Crawford responded in relevant part as follows:

> In that correspondence you express concern that your son, Craig Frentzel, #214784, was subjected to unfair assignment to segregation between July 7 and August 12, 2005, while housed at the Northeast Correctional Center....
>
> A review of this matter reveals that your son was originally assigned to segregation for clogging up his toilet with discarded milk cartons. The violation was later reduced to a violation for sanitary rules, and he was assigned ten days disciplinary segregation.
>
> Due to the length of time that has passed [since] Mr. Frentzel's assignment to segregation it is difficult to investigate your son's complaints about abuse and why he may not have received canteen items during that time. I would suggest Mr. Frentzel file an Informal Resolution Request if he has ongoing concerns about this matter so that they may be investigated in full. It should be noted that he is well past the 15 day time limit to do so, but his concerns will be addressed nonetheless, just as they are in any allegations of abuse or denial of privileges.

---

[5] Plaintiff filed an IRR contesting his guilt in this matter on August 3, 2005. (Doc. No. 124-6). As a result, the monetary fine was withdrawn, and the IRR was resolved by discussion on August 11, 2005. (Id.). Plaintiff now maintains he only signed the IRR "resolved" because Defendant Thompson said he would leave administrative segregation the next day if he did, but otherwise would have to remain in the unit until the matter was resolved. (Id.; see also Compl., ¶ 39).

(Doc. No. 69-3, P. 11). Plaintiff then filed an Offender Grievance regarding the conditions on June 23, 2006, but the Grievance was denied by former Defendant Candace Willis as follows:

> I am in receipt of a grievance you are attempting to file on NECC. I am unable to accept the grievance due to the fact that the issue was resolved by discussion on August 11, 2005.[6] This resolution was verified by your signature on the Informal Resolution Request. Also, the topic listed has long since exceeded the time allowed by the grievance policy to address issues.

(Doc. No. 123-3, PP. 1-4).

Plaintiff filed his original Complaint in this matter on February 15, 2006. (Doc. No. 3). In his Second Amended Complaint, filed March 12, 2007, Plaintiff asserts the following causes of action against Defendants Carter, Crawford, Moore, Purkett, Thompson and others: Deliberate Indifference to Serious Medical Needs (Count I); Cruel and Unusual Punishment (Count II); Due Process (Count III); and Prima Facie Tort (Count IV).[7]

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

---

[6] See Doc. No. 124-6.

[7] Count IV of Plaintiff's Complaint was dismissed on July 24, 2007, for failure to file a healthcare affidavit. (Doc. No. 165).

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

I.  **Deliberate Indifference To Serious Medical Need**

In Count I of his Complaint, Plaintiff alleges Defendants demonstrated deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Plaintiff does not allege Defendants were personally involved in providing any of his medical care, however[8]; rather, Plaintiff's claims appear to be based on the following policies allegedly implemented by some or all of these Defendants: a policy of denying certain psychotropic medications, due to cost (Compl., ¶ 23); a policy of failing to exercise supervisory control over their employees (Compl., ¶ 25); a policy of delaying prisoners' receipt of medications upon their arrival at MDOC (Compl., ¶ 28); a policy of failing to send an ample supply of medications with offenders when they go on "out-count"

---

[8] Defendants maintain they lack the training to participate in decisions regarding the diagnosis and treatment of offenders' medical and mental health problems. (Defendants' Facts, ¶¶ 9, 10).

(Compl., ¶ 31); and a policy of not permitting offenders to stop at the medical unit prior to "out-count" (Compl., ¶ 32).

Upon review of Plaintiff's submissions, the Court finds Plaintiff fails to set forth specific facts showing a genuine issue regarding Defendants' alleged policies, practices or customs remains for trial. Specifically, while Plaintiff states in his response that, "numerous inmates within the Missouri Department of Corrections have filed numerous grievance procedures which would alert the Defendants that there is a problem with the medical services being provided to the inmates within the Missouri Department of Corrections" (Plaintiff's Response to Defendants' Motion for Summary Judgment, P. 6), he offers no evidence to support this assertion beyond his unsubstantiated allegation, nor does he show a widespread pattern of unconstitutional behavior resulting from the alleged policies. Defendants' Motion for Summary Judgment on Plaintiff's claim of deliberate indifference to a serious medical need must therefore be granted.[9]

As further support for its ruling, the Court finds Plaintiff's claim of deliberate indifference with respect to these Defendants fails on the merits as well. The Eighth Circuit has held that, "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and [o]ne condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "To establish that the defendants' conduct violated the Eighth Amendment's prohibition against cruel and unusual punishment, [Plaintiff] must demonstrate that the individual defendants were deliberately indifferent to his serious medical needs." White v. Boydston, 2007 WL 522312 at *5 (E.D. Mo. Feb. 14, 2007) (citations omitted).

---

[9] To the extent Plaintiff attempts to assert new claims against Defendants Carter, Crawford, Moore, Purkett and/or Thompson in his response to Defendants' Motion for Summary Judgment, such claims are not properly before this Court and will not be addressed in this Order.

> There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted); see also Chance v. Armstrong, 143 F.3d 698, 702 (2nd Cir. 1998) (internal quotations and citation omitted) ("An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Upon consideration, the Court finds even assuming, arguendo, that Plaintiff can establish the existence of a serious medical need, he cannot show these Defendants exhibited deliberate indifference to that need. The Court's review of the record reveals the only allegations of personal involvement with Plaintiff's claims regarding medical care on the part of these Defendants to be as follows: (1) in his position as Superintendent at ERDCC, Defendant Purkett signed Plaintiff's Grievance regarding the failure to supply medications on "out-count"; and (2) Defendant Crawford responded to Plaintiff's mother's letter regarding the conditions in administrative segregation by suggesting that Plaintiff file an IRR regarding his concerns. The Court finds these instances insufficient to demonstrate Defendants Purkett and Crawford were directly involved in or personally responsible for the alleged violations of Plaintiff's constitutional rights, and so Defendants' Motion for Summary Judgment must be granted.

## II. Cruel And Unusual Punishment

In Count II of his Complaint, Plaintiff alleges his confinement in administrative segregation constituted cruel and unusual punishment. Specifically, Plaintiff complains about the lack of air

conditioning; the denial of his requests to place an emergency phone call and purchase stamps, playing cards, and hygiene items; and the presence of ants in his cell. (Compl., ¶ 36).

"[T]he Constitution does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Johnson v. Mulcahy, 2007 WL 2485006 at *3 (E.D. Mo. Aug. 29, 2007) (internal quotations and citations omitted).

> Prison officials violate the Eighth Amendment when two requirements, one objective and one subjective, are met. First, the alleged deprivation must be objectively "sufficiently serious." Second, the deprivation must subjectively constitute "unnecessary and wanton infliction of pain." For a prison official's actions or omissions to be "sufficiently serious," they must result in the denial of the "minimal civilized measure of life's necessities."

Id. (citations omitted).

Upon consideration, the Court finds Plaintiff's allegations are not sufficiently serious to qualify as Eighth Amendment cruel and unusual punishment.[10] See, e.g., Seltzer-Bey v. Delo, 66 F.3d 961 (8th Cir. 1995); Adams v. Steele, 2008 WL 762495 (E.D. Mo. Mar. 21, 2008); Wishon v. Gammon, 978 F.2d 446 (8th Cir. 1992). Defendants' Motion for Summary Judgment on Plaintiff's claim of cruel and unusual punishment must therefore be granted.[11]

---

[10] As stated above, while NECC's administrative segregation unit does not have air conditioning, it is cooled by large exhaust fans installed in the walls outside the offenders' cells and by vents in the cell windows. (Defendants' Facts, ¶ 14). Furthermore, the Court's review of the record reveals that although Plaintiff complained about his inability to place phonecalls and purchase stamps and playing cards during his confinement in administrative segregation, he never expressed concern regarding the alleged lack of sanitary conditions and presence of ants. Instead, the first mention of those conditions is in Plaintiff's mother's offender abuse complaint, filed almost one year after Plaintiff was released from administrative segregation. (See Doc. No. 69-3).

[11] To the extent Plaintiff's claim of cruel and unusual punishment rests on an alleged lack of medical attention during his stay in administrative segregation, the Court notes it is undisputed that during his confinement CMS medical personnel made four daily rounds of the unit, and further that Plaintiff himself received frequent medical attention. (See Defendants' Facts, ¶¶ 12, 13, citing Carter Aff., ¶ 4; Thompson Aff., ¶ 4; Exhibit G, Medical Record History for Plaintiff from July 7,

**III.     Due Process**

In Count III of his Complaint, Plaintiff alleges his due process rights were violated when he improperly was confined to administrative segregation at NECC. Under Eighth Circuit law, "to sustain his due process claim regarding the proceedings which resulted in his being placed in administrative segregation, [Plaintiff] must demonstrate that the conditions imposed on him constituted an atypical and significant hardship in relation to the ordinary incidents of prison life." Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006) (citation omitted). "A demotion to segregation, even without cause, is not itself an atypical and significant hardship unless [Plaintiff] points to some specific difference between his conditions in segregation and the conditions in the general population which amounts to such a hardship." Id. (citation omitted). Plaintiff offers no evidence of such differences[12], and so Defendants' Motion for Summary Judgment on Plaintiff's due process claim must be granted. Id.; see also Sandin v. Conner, 515 U.S. 472, 483-86, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (only liberty interest in prison is freedom from restraint which creates atypical and significant hardship, and administrative segregation, in itself, is neither).[13]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants James Carter, Larry Crawford, Jim Moore, James Purkett, and Michelle Thompson's Motion for Summary Judgment (Doc. No. 189) is

---

2005, to August 12, 2005).

[12] See Section II, supra.

[13] In light of the Court's above rulings on the merits of Plaintiff's claims, it need not address Defendants' assertions regarding qualified immunity and failure to exhaust.

**GRANTED**, and Plaintiff's claims against Defendants Carter, Crawford, Moore, Purkett and Thompson are **DISMISSED** with prejudice.

Dated this 23rd day of June, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE